United States District Court
Southern District of Texas
**ENTERED**
October 09, 2024
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| KIMBERLY GUERRA JOHNSON, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:21-cv-00361 |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Kimberly Guerra Johnson seeks judicial review of an administrative decision denying her application for disability insurance benefits under Title II of the Social Security Act (the "Act"). Johnson and Defendant Martin O'Malley, the Commissioner of the Social Security Administration (the "Commissioner"),[1] have both filed briefs. *See* Dkts. 21, 22. After reviewing the briefing, the record, and the applicable law, I recommend the Commissioner's decision be reversed and this matter remanded to the Social Security Administration for further proceedings consistent with this recommendation.

## BACKGROUND

Johnson filed an application for disability benefits on February 24, 2014, alleging disability beginning July 1, 2011. Her application was denied and denied again upon reconsideration. On February 7, 2017, an Administrative Law Judge ("ALJ") held a hearing at which Johnson appeared unrepresented. On March 6, 2017, the ALJ issued a decision, finding that Johnson had not been under a disability. The Appeals Council remanded the case to the ALJ with instructions to

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. O'Malley is "automatically substituted" as the defendant in this suit. FED. R. CIV. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

further consider [Johnson]'s maximum residual functional capacity, provide appropriate rationale with specific references to the evidence supporting the assessed limitations, including any medical source opinions and explained in the decision why certain mental restrictions were found to affect [Johnson]'s residual functional capacity. . . . Additionally, the Appeals Council instructed the [ALJ] to provide sufficient function by function assessment of the mental limitations regarding concentration, persistence and pace. Finally, the Appeals Council ordered the [ALJ] to discuss the State Agency limitations, which are less than a full range of light work, given the prior decision found a residual functional capacity for a full range of light work.

Dkt. 6-3 at 22. A different ALJ received the case on remand and held a hearing on June 4, 2019. Johnson again appeared unrepresented at the hearing. On July 15, 2019, the ALJ issued a decision, finding that Johnson was not disabled. Johnson requested the Appeals Council review the ALJ's decision. The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review.

On December 27, 2021, Johnson "timely filed" a complaint seeking review of the Commissioner's decision. Dkt. 5 at 2. The Commissioner filed an answer and a record of the administrative transcript on May 13, 2022. The Commissioner did not, however, serve Johnson with these documents. *See* Dkt. 16 at 1 ("[T]he Commissioner cannot establish that [Johnson] was properly served with the Commissioner's filings, including the administrative transcript."). Johnson was not served with the administrative transcript until January 23, 2024. *See id.* Due to the Commissioner's regrettable inattentiveness to effectuating service, the parties did not file their briefs until two years and three months after Johnson first instituted this appeal.

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to "(1) whether the Commissioner applied the proper legal standards; and (2) whether the Commissioner's decision is supported by

substantial evidence on the record as a whole." *Est. of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in *any* substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quotation omitted). The Commissioner uses a sequential, five-step approach to determine if a claimant is disabled:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See Salmond*, 892 F.3d at 817. Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's maximum capabilities given the physical and mental limitations detailed in the administrative record. *See*

*Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id.*

## THE ALJ'S DECISION

At Step 1, the ALJ found that Johnson "did not engage in substantial gainful activity during the period from her alleged onset date of July 1, 2011 through her date last insured of December 30, 2017." Dkt. 6-3 at 25.

At Step 2, the ALJ found that Johnson suffered from "the following severe impairments: posttraumatic arthritis of the neck, back and left hip, obesity, migraine headache, depression and anxiety." *Id.*

At Step 3, the ALJ found that Johnson "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments." *Id.* at 25–26.

Prior to consideration of Step 4, the ALJ determined:

> [T]hrough the date last insured, [Johnson] had the residual functional capacity lift and carry 10 pounds occasionally and less than 10 pounds frequently; sit six hours of an eight hour workday and stand and/or walk three hours of an eight hour workday with customary breaks; no work around loud noise such as traffic or construction, and no work in bright light, such as direct sunlight or strobe lights; no climbing of ladders, ropes or scaffolds but can occasionally climb stairs and ramps; occasionally balance, kneel and crawl. She can frequently stoop and crouch. [Johnson] has the ability to understand, remember and apply/carry out simple instructions and perform simple and repetitive tasks. She can maintain concentration, persistence and pace for two[-]hour periods with customary breaks during an eight hour workday; no fast paced production work and she can occasionally interact with supervisors, coworkers, and the general public.

*Id.* at 27–28.

At Step 4, the ALJ found that "[t]hrough the date last insured, [Johnson] was unable to perform any past relevant work." *Id.* at 33.

At Step 5, the ALJ determined that "there were jobs that existed in significant numbers in the national economy that [Johnson] could have

performed." *Id.* at 34. In making this determination, the ALJ relied on testimony from a vocational expert ("VE") that Johnson

> would have been able to perform the requirements of representative occupations such as:
>
> 1. Call Out Operator is sedentary and unskilled with a SVP of 2 (75,000 jobs in the national economy).
>
> 2. Document Preparer is sedentary and unskilled with a SVP of 2 (130,000 jobs in the national economy).
>
> 3. Surveillance System Monitor is sedentary and unskilled with a SVP of 2 (140,000 jobs in the national economy).

*Id.* at 35. Accordingly, the ALJ found that Johnson "was not under a disability, as defined in the Social Security Act, at any time from July 1, 2011, the alleged onset date, through December 30, 2017, the date last insured." *Id.*

## DISCUSSION

Johnson is representing herself in this appeal. Although Johnson has filed a brief, her brief simply recounts the delay in this case and her self-assessed limitations. Johnson does not raise any arguments regarding the Commissioner's decision below. *See* Dkt. 22. Accordingly, I have reviewed the record to determine only if the ALJ applied the proper legal standards and whether the ALJ's decision is supported by substantial evidence. *See Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). I find that the ALJ applied the proper legal standards and the ALJ's decision at Steps 1–4 are supported by substantial evidence. The ALJ's decision at Step 5, however, is plainly *not* supported by substantial evidence.

"When, as here, the claimant suffers from additional limitations that make the Medical–Vocational Guidelines inapplicable, the Commissioner must rely upon the services of a vocational expert or similar evidence." *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000); *see also* Dkt. 6-3 at 35 (acknowledging that Johnson's "ability to perform all or substantially all of the requirements of [the full range of sedentary] work was impeded by additional limitations"). Social Security Regulation 00-4p imposes upon the ALJ "an affirmative responsibility to ask about any possible conflict between [the] VE . . . evidence and information provided in

5

the [Department of Labor's Dictionary of Occupational Titles ('DOT')]." Moreover, the Fifth Circuit "has acknowledged that the DOT job descriptions should not be given a role that is exclusive of more specific vocational expert testimony with respect to the effect of an individual claimant's limitations on his or her ability to perform a particular job." *Carey*, 230 F.3d at 145.

Here, the ALJ's decision is not supported by substantial evidence because the VE's testimony that Johnson could perform certain identified jobs while carrying out only simple instructions, and only for two hours at a time, is in conflict with the descriptions of those jobs in the DOT. Relying on the VE's testimony, the ALJ determined that Johnson can perform the jobs of Call-Out Operator (DOT 237.367-014), Document Preparer (DOT 249.587-018), and Surveillance-System Monitor (DOT 379.367-010). Each of these jobs requires a reasoning level of three. *See* U.S. DEP'T OF LABOR, DICTIONARY OF OCCUPATIONAL TITLES, at 207, 219, 281 (4th ed. rev. 1991). A reasoning level of three requires a worker to "[d]eal with problems involving several concrete variables in or from standardized situations." *Id.* at 1011. Yet, the ALJ found that Johnson's RFC—which indicates Johnson's *maximum* capabilities—limits her to carrying out only simple instructions, and only for two hours at a time.

Other courts in this circuit have found that "the VE's testimony is unreliable" where an ALJ fails "to identify and resolve apparent conflicts," such as the apparent conflict that arises when a "job explicitly requires a reasoning level of three [and] the ALJ limited the Plaintiff to 'simple' work-related decisions." *Fields v. Comm'r of Soc. Sec.*, No. 1:21-cv-133, 2022 WL 1599437, at *3–4 (N.D. Miss. May 20, 2022). The same result is warranted here. Because the ALJ failed to identify and resolve the conflict between the DOT job descriptions and Johnson's RFC, the VE's testimony is unreliable, and "the ALJ's conclusion that jobs exist in significant numbers in the national economy that [Johnson] can perform is not supported by substantial evidence." *Id.* at *4.

6

## CONCLUSION

Because the ALJ's decision is unsupported by substantial evidence, I recommend the Commissioner's decision be reversed and this matter remanded for further proceedings consistent with this recommendation.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 9th day of October 2024.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE